

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-579-GWU

DIANA FLANNERY,                                        PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Flannery

> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Flannery

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Diana Flannery, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease and hypertension. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 47 years, eighth-grade education, and unskilled and semiskilled work experience, could perform any jobs assuming that she were capable of "light" level exertion, needed the option of sitting or standing at 30 minute intervals, could not be exposed to dust, and could have no concentrated exposure to extreme heat, or even moderate exposure to extreme cold. (Tr. 226-8). The VE responded that

7

there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 228).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged that she became disabled due to kidney problems, chest pains and shortness of breath on March 1, 2002, one month after being laid off from her job as a machine operator. (Tr. 68-9). By the time of the administrative hearing in June, 2005, she stated that she had chest pains "off and on," and was not taking any medication due to lack of funds, although she was supposed to be on a Nitroglycerin patch. (Tr. 216). She was still short of breath. Her main allegation now concerned constant back pain radiating up her head and down her left leg. (Tr. 214-15). She had been unable to see a neurologist for her back problem after losing her medical card. (Tr. 219). A tumor had also been found on her adrenal gland, which caused abdominal pain every "couple of weeks." (Id.).

Medical evidence in the transcript confirms that the plaintiff was hospitalized for chest discomfort in January, 2003. Her cardiologist, Dr. Anis Chaloub, noted that her hospital course was "significant for the absence of any myocardial infarction." (Id.). She was given medications for elevated cholesterol and discharged home in "stable" condition. (Id.). Subsequently, following a positive stress test (Tr. 105), Dr.

Flannery

Chaloub performed a cardiac catheterization which showed moderate double vessel coronary artery disease, which he elected to treat with "conservative medical management" (Tr. 107-8). No restrictions were suggested. In May, 2003, Dr. Chaloub noted that the plaintiff had not been compliant with using her Nitroglycerin patches and had "poorly controlled" hypertension due to poor compliance. (Tr. 103). In November, 2003 the plaintiff described improvement in her chest pain when she used Nitroglycerin, but she continued to smoke cigarettes. Dr. Chaloub noted a heart murmur and jugular venous distention (JVD), and ordered a stress Thallium test. (Tr. 102). The stress test and an echocardiogram, were obtained in December, 2003. The exercise test was inconclusive for ischemia because of a submaximal level of exertion due to beta blocking agents and poor physical condition. (Tr. 109). The echocardiogram showed moderate left atrial enlargement, left atrial hypertrophy, an atrial septal aneurysm, and "moderate" mitral regurgitation. (Tr. 111). However, Dr. Chaloub noted in May, 2004, that the plaintiff appeared to be stable without any complaints of a cardiovascular nature. (Tr. 185). In August, 2004, he recorded that although the plaintiff had recurrent chest discomfort, she had not been compliant with medications because of financial problems, and her physical examination, including an electrocardiogram, was normal. (Tr. 184). He recommended that she resume her medications and return in three months for follow-up. No restrictions were specified.

Flannery

The plaintiff's treating family physician, Dr. Bernard C. Moses, submitted office notes from 2003 and 2004. An abnormal CT scan of the abdomen in September, 2003, suggested an adrenal mass, and Dr. Moses referred his patient to an endocrinologist, Dr. David Escalante. (Tr. 126). After a repeat MRI, Dr. Escalante concluded that the size of the mass almost certainly excluded malignancy, and suggested clinical observation and repeat scanning in six months "just to watch it." (Tr. 135-6). A CT scan in April, 2004, showed a slight increase in the mass, and the radiologist wrote after an MRI in May, 2004 that "this adrenal gland mass does not have signal characteristics that are classically consistent with an adenoma or malignancy, thus, differentiation between the two processes cannot be performed." (Tr. 137).

Dr. Joseph Koenigsmark conducted a consultative physical examination on January 7, 2004. The plaintiff reported that she was not advised to have surgery after her catheterization and, although she was still having occasional chest pain and shortness of breath even using Nitroglycerin patches, she continued to smoke. (Tr. 115-16). She had also recently been found to have a mass on her "kidney." (Tr. 116). Dr. Koenigsmark's physical examination showed essentially no abnormalities, and a pulmonary function test was normal. (Tr. 117-18, 120).[1] He indicated that the

---

[1]There is no indication that the consultative examiner had access to prior medication records.

10

plaintiff's present condition did not show any ease of fatigability or any pain brought on during the examination, and concluded that she would have "very few" limitations in her ability to sit, stand, lift, carry, and move objects. (Tr. 118).

State agency physicians John Rawlings and P. Saranga reviewed the record in January and June, 2004, respectively, and concluded that the plaintiff was capable of "light" level exertion, and needed to avoid concentrated exposure to extreme heat and even moderate exposure to extreme cold. (Tr. 159-63, 165-72). Dr. Koenigsmark was given great weight by Dr. Rawlings "based upon his exam"; however, Rawlings also indicated that "other evidence would indicate some limitations." (Tr. 174).

Since the hypothetical question to the vocational expert included even more limitations than were found by Dr. Koenigsmark or Medical Reviewer Rawlings for the period prior to March, 2004, the decision in so far as it refers to this early period of time will be affirmed.

However, the records documenting the subsequent period show that the plaintiff voiced a new, serious complaint, new objective study information was submitted and an unaddressed treating physician's opinion was in the record.

Exhibit 5F contains progress notes from Dr. Moses which show that in April, 2004, the plaintiff was seen by the doctor with complaints of "a lot of neck pain." (Tr. 189). Dr. Moses obtained MRIs of the cervical, thoracic, and lumbosacral spines,

Flannery

the results of which appear in Exhibit 6F. The cervical spine MRI showed a protrusion at the C4-C5 level producing mild spinal stenosis without compression of the spinal cord, a moderate diffuse disc bulge at C5-C6 compressing the left-sided C6 nerve and mild degenerative disc disease at C6-C7. (Tr. 138). The lumbar and thoracic MRIs showed mild to moderate degenerative disc disease with no evidence of nerve compression or spinal stenosis. (Tr. 139-40). This new evidence may or may not have been considered by Dr. Saranga, who indicated that new evidence had not provided a reason to change Dr. Rawlings's assessment. (Tr. 159-60).[2]

Dr. Moses saw the plaintiff in follow-up on May 26, 2004, detecting decreased motor strength of the upper extremity and referred his patient to a neurologist "ASAP." (Tr. 188). She was seen again the next day to obtain medications for poor sleep, and was again advised to follow-up with a neurologist. (Tr. 187). Dr. Moses wrote a note on his prescription pad six days later stating that from the patient was "physically unable to be gainfully employed due to medical condition." (Tr. 142).

---

[2] Dr. Saranga was evidently <u>un</u>aware of Exhibit 7F (Tr. 142, 163) and made no reference to the nature of new medical records submitted after Rawlings' assessment. Since he referred to no musculoskeletal allegations (Tr. 158) and agreed that there were <u>no</u> new allegations (Tr. 164), a logical deduction is that he was unaware of Exhibit 6F as well.

12

Flannery

Two dates, June 2, 2004 and September 2, 2004, were listed at the top of the prescription pad.[3]

In summary, since the ALJ's hypothetical question includes even more limitations that were found by Dr. Koenigsmark or Medical Reviewer Rawlings for the period prior to March, 2004, that portion of the decision will be affirmed. Beginning in March, 2004, the plaintiff began to complain of constant neck or shoulder pain. For this period, the ALJ's oversight of Treating Physician Moses' disability statement is particularly troubling, given the fact that Moses ordered the detailed cervical spine MRI testing probably unseen by any other medical source of record.

The case will be affirmed in part and remanded for further consideration in part.

This the  11  day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[3] To the extent there was any ambiguity about the implication of the two dates listed on the note, the treating physician should have been recontacted by the agency, 20 C.F.R. Section 404.1512(d), particularly as the plaintiff was represented by a non-attorney.